**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-60177
Summary Calendar
_____


PAUL A. LENART,

                              Plaintiff-Appellant,

          VERSUS

     A. WALLACE CONNERLY, M.D.,

          GAIL CARLSON,

     UNIVERSITY OF MISSISSIPPI MEDICAL CENTER;

               and

          JOHN DOE,

                              Defendants-Appellees.



_____

Appeal from the United States District Court
for the Southern District of Mississippi
(3:96-CV-307BN)
_____
September 17, 1997


Before JOLLY, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

_____

   [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

Paul Lenart appeals an adverse summary judgment on his 42 U.S.C. § 1983 claims alleging retaliatory employment actions for engaging in public speech and organizing activities. Finding no reversible error, we affirm.

I.

Lenart worked as a night-shift respiratory therapy technician at the University of Mississippi Medical Center ("UMC") for a little over two years beginning in January 1994. In that position, his duties included working in the critical care areas of the hospital. During the time of his employment at UMC, Lenart joined a union, the Mississippi Alliance of State Employees, or "MASE." He was an active union member who provided sign-up cards to enable his fellow employees to enlist; he and other union members also attended monthly departmental "birthday parties" in order to organize.

Lenart believed, as did MASE, that the UMC was understaffed and should hire more employees. He made no secret of his opinion on this issue (or, for that matter, on other issues as well). Lenart, however, apparently could not always manage to express his views diplomatically. Although it is not evident, from the record, exactly how many such outbursts there actually were, Lenart admits to one incident, in January 1996, in which he used profanity to express himself on the under-staffing issue in front of patients and their families. The defendants also contend that there were

other such incidents, including ones in December 1995 and February 1996.[1]

On February 22, 1996, a letter to the editor appeared in a local newspaper, signed by Lenart and some of his colleagues from the UMC.  The letter supported litigation against tobacco companies by the state attorney general and criticized the governor for not supporting the attorney general's efforts.  The letter indicated that the authors were employed in respiratory therapy and that their employer was the UMC.

Upon reading the letter, defendant Gail Carlson, the Director of Respiratory Therapy at UMC, wrote memoranda to Lenart and the other authors stating that they should refrain from identifying themselves as UMC employees.  Although employees could comment on public issues in their individual capacities, she stated that representation as UMC employees was inappropriate.  Carlson explained that under UMC policy, only the public relations office could comment for the UMC on matters of public importance.  She thereafter placed a copy of the memorandum in each employee's personnel file.[2]

Subsequently, Carlson learned from one of her colleagues about

---

[1] In the case of the January 1996 incident, Lenart was "counseled" by his immediate supervisor, who failed to file a written report on any of the incidents.

[2] Lenart responded to Carlson with his own memorandum stating that he believed he was entitled to express his views and that Carlson's memo was unfair, illegal, and against UMC procedures.

3

the outbursts that Lenart had made in front of patients and their families. Concerned about Lenart's fitness to work around patients, Carlson wrote memoranda to Lenart's supervisors asking for a full explanation of any of his aberrant conduct. She also placed Lenart on suspension, without pay, pending investigation by the UMC campus police.

Upon completion of the investigation, Carlson terminated Lenart. In the termination letter, she notified him that the reason for his dismissal was his "unprofessional conduct in the presence of patients and their families."[3]

Lenart brought the instant actions under § 1983 and asserted related state law claims,[4] complaining, *inter alia*, that Carlson, under color of state law, had infringed his liberty interests in free expression and free association under the First Amendment. He alleged, among other things, that his dismissal was retaliatory for his union activities and his letter to the editor. He made similar claims against the UMC itself, against Dr. A. Wallace Connerly, the chief administrator of the UMC, and against a John Doe, an employee of the UMC to be determined as more information came to light.

The magistrate judge granted defendants an order protecting

---

[3] During litigation, UMC also discovered that Lenart had falsified his application for employment. Defendants assert this violation of UMC policy as an additional justification for Lenart's termination.

[4] The district court dismissed the state law claims under *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). The dismissal of those claims was not appealed.

4

them from discovery on the underlying claims, pending a determination of their official immunity status. Before moving for summary judgment, defendants deposed Lenart, who, in the meantime, failed to conduct any discovery on defendants concerning the immunity issue. He also did not conduct any discovery on persons other than defendants to support his claims.

Defendants moved for summary judgment, or in the alternative, a determination that their claims were barred by official immunity.[5] In his opposition to the motion, Lenart requested a stay until he had more time to conduct discovery (a request apparently based on FED. R. CIV. P. 56(f)). Because the protective order prevented him from conducting discovery on defendants about the merits of the case, Lenart maintained that a stay was justified until the protective order was removed. In the event the court would not grant a stay, however, Lenart believed that the pleadings themselves were sufficient to withstand summary judgment. He did not submit any documents under FED. R. CIV. P. 56(e)SSaside from the complaint and the motion in opposition to summary judgmentSSto rebut defendants' motion and supporting affidavits.

The district court refused to grant the motion to stay. Although aware of the need to give Lenart a full and fair

---

[5] The defendants moved, without Lenart's opposition, to dismiss the actions against the UMC, and Carlson and Connerly in their official capacities, and in their private capacities for retrospective damages, without prejudice under the Eleventh Amendment. The district court granted the motions to dismiss without prejudice in the order granting summary judgment on the remaining claims. Lenart does not contest any of the dismissals based on Eleventh Amendment grounds.

opportunity to present evidence at the summary judgment stage, the court refused the motion for three reasons:  He had failed to comply with the local rule requiring that the motion to stay be filed separately from his opposition to the summary judgment motion; he had failed to give any indication that further discovery would be useful in ascertaining evidence to oppose the summary judgment motion; and finally, he had failed to make use of the limited discovery available to him, that is, he had conducted no discovery of independent witnesses in the seven months between filing the complaint and defendants' filing the summary judgment motion, and had failed even to file his own affidavits in support of his motion to stay and his opposition to the summary judgment motion.

The district court granted summary judgment.  Because Lenart had presented no evidence[6] to support his claims in the face of defendants' motion and supporting materials submitted in accordance with rule 56(e), the court found that there was no genuine issue of material fact presented.  In the alternative, the  court found that Connerly and Carlson were entitled to official immunity, and thus it dismissed the claims.

II.

---

[6] Lenart did attach several unsworn documents to his opposition to summary judgment.  The district court, however, correctly refused to weigh the evidence as it would have if the evidence had been in accordance with rule 56(e).

Lenart contends that the district court erred in not staying consideration of the summary judgment motion until he was able to conduct further discovery. The decision whether to grant a stay of consideration of a summary judgment motion pending further discovery under rule 56(f) is within the sound discretion of the district court.[7]

It is not an abuse of discretion to deny a rule 56(f) continuance "where the result of a continuance to obtain further information would be wholly speculative." *Robbins*, 952 F.2d at 107 (quoting *Paul Kadair, Inc. v. Sony Corp.*, 694 F.2d 1017, 1029 (5th Cir. 1983) (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981))). To merit such a continuance, the moving party must make some colorable showing that further discovery would be justified.

The district court reasonably could have concluded that the basis of any continuance would have been "wholly speculative." Lenart made no showing that further discovery would be useful to the court's decision making. He had failed to make use of any of the discovery available to him: Not subject to the protective order were independent witnesses, including, but not limited to, hospital workers, union members, and newspaper editors; none were deposed, and none submitted affidavits for Lenart. Also, Lenart

---

[7] *See, e.g.*, *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 102 (5th Cir. 1990) ("Denial of a continuance under Rule 56(f) is governed by an abuse of discretion standard." (citation omitted)); *Robbins v. Amoco Prod. Co.*, 952 F.2d 901, 907 (5th Cir. 1992).

could have propounded discovery on the defendants about the status of their qualified immunitySSbut he did not.  Finally, he could have submitted his own affidavits in support of the motion to stay and in opposition to the summary judgment motionSSagain, he did not.

Instead, after sitting on his hands for over seven months, Lenart asked the court for additional time without any justifiable explanation.  Under these facts, the district court reasonably could conclude that extra time would only result in an unjustified and unnecessary delay.[8]

III.

We review a summary judgment *de novo*.  *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving

---

[8] The district court also argued that Lenart's failure to comply with the the court's local ruleSSrequiring that the motion to stay be filed separately from the opposition to summary judgmentSSjustified the court's refusal to grant the stay.  We find it unnecessary to address the issue, as other circumstances solidly support the court's decision.

8

party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial.  *See Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant.  *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 327; *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

IV.

A.

First, we address Lenart's claims against Carlson.  A claim under § 1983 asserting retaliatory employment actions because of the employee's protected speech requires that a plaintiff

> first prove that [his] speech involved a matter of public
> concern.  *Connick v. Myers*, 461 U.S. 138, 147 (1983).
> Second, [he] must demonstrate that [his] interest in
> "commenting upon matters of a public concern" is greater
> than the defendants' interest in "promoting the
> efficiency of the public services [they] perform."
> *Pickering Board of Education*, 391 U.S. 563, 568 (1968).
> Third, [he] must show that [his] speech motivated the
> defendants' decision to fire [him].  *Mt. Healthy City
> School District v. Doyle*, 429 U.S. 274, 287 (1977).  If

9

> [the plaintiff] is able to prove these three elements,
> the burden shifts to the defendants to prove that they
> would have [taken the same adverse employment actions]
> even if [the plaintiff] had not exercised [his] right to
> free speech. *Id.*

*Frazier v. King*, 873 F.2d 820, 825 (5th Cir. 1989).[9]

As noted by the district court, there are three actions that Lenart alleges Carlson took in retaliation for his letter to the editor and for his union activities. We conclude that none of the alleged actions constitutes actionable retaliation under § 1983.[10]

First, Lenart alleges that Carlson changed the frequency of the departmental birthday parties from monthly to quarterly in order to prevent his union-organizing activities. Second, he alleges that Carlson's placement in his personnel file of the memorandum concerning the letter to the editor was an adverse employment action taken in retaliation for his speech on a matter of public concern. Finally, he alleges that Carlson terminated him in retaliation for his union activities and for his letter to the editor.

---

[9] *Accord Brady v. Houston Ind. Sch. Dist.*, 113 F.3d 1419, 1422 (5th Cir. 1997); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1050 (5th Cir. 1996); *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir. 1990).

[10] The district court correctly determined that the first two actionsSSchanging the frequency of the parties and placing the memo in the personnel fileSSwere not "adverse employment actions" as a matter of law. *See Pierce v. Texas Dept. of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). Thus, the district court found that the actions could not have been retaliatory in nature. For purposes of our discussion, however, we will assume that all three actions were "adverse employment actions."

1.

Lenart has failed to raise a material fact issue that would "show that [his] speech motivated [Carlson's] decision" to reschedule the frequency of the departmental birthday parties. *Frazier*, 873 F.2d at 825 (citing *Mt. Healthy*, 429 U.S. at 287). There is no evidence that Carlson changed the frequency of the birthday parties in order to interfere with Lenart's free association with other MASE members. Lenart provides only supposition in the face of Carlson's sworn denials.[11] Lenart presents neither affidavits nor other evidence in accordance with rule 56(e). Therefore, when we compare the generalities of the pleadings with the specifics of Carlson's affidavits and defendants' deposition of Lenart, we find there to be no genuine fact issue presented with regard to the birthday parties.[12]

2.

Second, Lenart maintains that Carlson placed her memorandum concerning the letter to the editor in his personnel file in retaliation for his protected speech. Because Lenart has made no

---

[11] Indeed, the district court perceptively noted that "Lenart admits in his deposition that, although he had never thought about it, the changing of the birthday parties was not focused on him as an individual . . . ."

[12] We could alternatively analyze this issue under the second prong of the *Frazier* test. *See Frazier*, 873 F.2d at 825 (quoting *Pickering*, 391 U.S. at 568). Lenart offers no evidence that would lead a reasonable fact finder to conclude that his interest in free association in this instance outweighs the UMC's interest in providing efficient medical care to its patients.

showing of why his speech interest outweighed the UMC's organization interests in operating a hospital, this claim fails the second prong of the *Frazier* test as a matter of law.

Lenart has offered no evidence to "demonstrate that [his] interest in 'commenting upon matters of public concern' is greater than the defendants' interest in 'promoting the efficiency of the public services [that they] perform.'" *Frazier*, 873 F.2d at 825 (quoting *Pickering*, 391 U.S. at 568). He submitted nothing to the court that could make any reasonable person think that his interest in identifying himself as a UMC employee when commenting on controversial public issues outweighs the UMC's interests in having an efficient procedure for official comment upon such issues by the public affairs office. Lenart also offers nothing to suggest that his speech interest outweighs the UMC's interest in keeping a record of supervisors' interactions with their subordinates by the placement of copies of memoranda sent to employees in their personnel files.

Lenart again has simply relied upon his own vague accusations in his complaint, his opposition to the summary judgment motion, and the unsworn statements attached thereto. Such evidence does not satisfy Lenart's burden under rule 56(c). *See Celotex*, 477 U.S. at 327; *Hanks*, 953 F.2d at 997.

3.

12

Finally, the analysis of Carlson's termination of Lenart is much the same as the analysis of the birthday party issue. Lenart has failed to show any facts demonstrating that there is a material fact issue with respect to Carlson's motivation for firing Lenart.[13]

Lenart alleges that Carlson fired him in retaliation for his letter to the editor and for his union activities. Carlson swears in an affidavit that the reason for Lenart's termination was his use of profanity in front of patients and their families. Again, Lenart offers no additional, rule 56(e)-type, evidence to refute Carlson's explanation; he even fails to submit his own affidavit. When we look at Lenart's vague pleadings next to Carlson's specific sworn denials, we have no choice but to affirm the summary judgment. *See Celotex*, 477 U.S. at 327.

### B.

Next we address Lenart's claims against Connerly. Lenart sues Connerly because he is the chief university administrator in charge of the UMC. Lenart does not allege that Connerly personally ordered or engaged in any of the above "adverse employment actions" or instituted any policies that deprived him of his constitutional rights. The district court correctly noted that the claims against

---

[13] *See Brady*, 113 F.3d at 1423 ("In order to establish that one's First Amendment right to free speech has been violated by an employer's retaliatory conduct, a plaintiff must prove . . . that such conduct was a 'substantial' or 'motivating' factor behind the defendant's action." (citations omitted)).

Connerly are merely *respondeat superior* claims for the actions of his subordinate Carlson.

We do not recognize vicarious liability for § 1983 claims.[14] The superior must somehow have engaged in the action, instituted the policy the subordinates followed, or committed some act of willfulness or gross negligence in supervising the subordinate who committed the § 1983 violation. *See Doe*, 15 F.3d at 452.

Lenart has alleged none of these facts needed to maintain his claim. In the face of his vague accusations, Connerly has offered an affidavit saying that he had no idea who Lenart was prior to the lawsuit and that he (Connerly) instituted no policies with the intention of depriving Lenart of his constitutional rights of free expression and free association. Again, rule 56(c) and *Celotex* lead us to conclude that summary judgment was correct. *See Celotex*, 477 U.S. at 327.[15]

For the foregoing reasons, the judgment is AFFIRMED.[16]

---

[14] *See, e.g.*, *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("A supervisor cannot be held liable under section 1983 on the basis of *respondeat superior*. Rather, the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." (citation omitted)); *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 452 (5th Cir. 1994 (en banc).

[15] Lenart argues that the circumstantial evidence of the timing of his terminationSSCarlson learned of his outbursts only after she wrote the memorandum about the letter to the editorSSshould be enough to raise a material fact issue. What Lenart fails to appreciate is that once Carlson has sworn that her actions were motivated by the outbursts and not by Lenart's public comments, Lenart must provide some evidence to show that Carlson's explanation was pretext. *See Brady*, 113 F.3d at 1423. Because he has failed to do so, we must rely on Carlson's unopposed affidavit and affirm the summary judgment.

[16] Because we find no material fact issues presented, we need not address
(continued...)

14

[16](...continued)
qualified immunity.